**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hugh Casiano,<br><br>    Plaintiff,<br><br>v.<br><br>Predator Motorsports Incorporated,<br><br>    Defendant. | No. CV-23-01145-PHX-DLR<br><br>**ORDER** |

Plaintiff Hugh Casiano filed this action in Maricopa County Superior Court in May 2023 alleging breach of contract and warranty claims arising out of a vehicle engine conversion. (Doc. 1-5.) Defendant Predator Motorsports, Inc. ("Predator") removed the case to this Court in June 2023. (Doc. 1.) Predator then moved to dismiss the claims under Federal Rule of Civil Procedure 12(b)(2). (Doc. 4.) Casiano objected to the motion and requested leave to conduct jurisdictional discovery. (Doc. 13.) The motion is fully briefed and no party requested oral argument. For the following reasons, the Court finds that it lacks personal jurisdiction over Predator, denies Casiano's request for jurisdictional discovery, and dismisses this case without prejudice.

**I. Background**

Casiano, an Arizona resident, entered into a service agreement in late 2020 or early 2021 with Predator, a California corporation, for a "H1 Duramax Conversion" on Casiano's 1997 Hummer H1 (the "Agreement"). (Doc. 1-5 ¶¶ 9-12.) The H1 Duramax

Conversion is a process by which the Hummer's existing engine is replaced by a Duramax diesel engine for the purpose of increasing the vehicle's power and fuel efficiency. (¶ 11.)

Predator operates a generally accessible website where it advertises itself as "the #1 progressive leader in high-quality products, innovation, and services for H1 . . . Hummers." (¶ 7.) Amongst other offerings, Predator advertises the H1 Duramax Conversion on its website. (¶ 11.) Predator also maintains a "Contact Us" form on its website where individuals interested in its services and products can initiate communications with representatives of the company. (Doc. 13 at 16.)

Casiano had conducted business with Predator before, ordering parts that Predator shipped to his Arizona residence in late 2015 or early 2016. (*Id.* at 15.) After that purchase, Casiano started receiving a number of newsletter emails from Predator, totaling ten emails between March 21, 2016 and July 3, 2019. (*Id.* at 22-47.) These emails, created and distributed exclusively by a third-party, Epik Productions, promote Predator's offerings through parts and services advertisements. (*Id.* at 16.)

On November 26, 2020, Casiano completed the "Contact Us" form on Predator's website and inquired into a H1 Duramax Conversion. (Doc. 4-1.) In this initial outreach, Casiano requested whether shipping to and from California, where all of the work was understood to take place, was available. (Doc. 4-1.) After that, Casiano and Predator began discussions and communicated over email and telephone to negotiate the terms of the Agreement. (Doc. 13 at 16.) Predator agreed to assist with transporting the vehicle when Casiano informed Predator that he was unable to start the car after it had been broken into. (*Id.* at 16-17)

Following completion of the H1 Duramax Conversion, Predator sent Casiano's Hummer back to Arizona where Casiano received it. (*Id.* at 18.) Casiano noticed that the Hummer was inoperable to the point of being un-drivable, so he brought the vehicle to an Arizona-based repair shop to diagnose the issue. (*Id.*) The repair shop informed Casiano that his Hummer would require extensive repair work to restore its functionality, and Casiano relayed that information to Predator. (*Id.*) Predator initially attempted to assist in

diagnosing the issue through text message, but then told Casiano that it would perform additional work only if Casiano shipped the vehicle back to California at his own expense. (*Id.* at 18, 49-51.)

Casiano filed this lawsuit alleging Predator breached the Agreement and certain associated warranties. (Doc. 1-5.) Predator has moved to dismiss the claims against it for lack of personal jurisdiction. (Doc. 4.)

**II. Legal Standard**

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). To do so, the plaintiff must show both that the forum state's long-arm statute confers jurisdiction over the non-resident defendant and that the exercise of jurisdiction comports with due process. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995).

Where, as here, the state's long-arm statute confers jurisdiction co-extensive with the limits of the due process clause, the two inquiries merge and the court need consider only whether the exercise of jurisdiction comports with due process. *Id.*; *Doe v. Am. Nat'l. Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997); Ariz. R. Civ. P. 4.2(a). The exercise of jurisdiction comports with due process when the non-resident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation and citation omitted).

If the non-resident defendant's "motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Schwarzenegger*, 374 F.3d at 800 (internal quotation and citation omitted). At this stage, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). Uncontroverted allegations in the complaint, however, "must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in

[the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588-89 (9th Cir. 1996) (internal quotation and citation omitted).

**III. Discussion**

The Court's exercise of personal jurisdiction may take two forms: general jurisdiction and specific jurisdiction. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161 (9th Cir. 2023). General jurisdiction requires the defendant to "engage in continuous and systematic general business contacts" in the forum state. *Schwarzenegger*, 374 F.3d at 801 (internal quotation and citation omitted). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id.* Casiano concedes that this Court lacks general jurisdiction over Predator and argues solely for specific jurisdiction.

Specific jurisdiction is more limited and only appropriate when "the specific cause of action arises out of a defendant's more limited contacts with the state." *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991). This Court uses the three-prong "minimum contacts" test to determine whether specific personal jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden on the first two prongs, and a failure to satisfy either is fatal. *Id.* But "[i]f the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotation and

citation omitted). Specific personal jurisdiction over Predator is lacking because Casiano has not satisfied the first prong.

Both parties submitted a declaration and exhibits with their briefs. (Doc. 13; Doc. 14-1.) According to Casiano's declaration, in late 2015 or early 2016 he purchased parts from Predator which Predator shipped to his home address in Arizona.[1] (Doc. 13 at 15.) He then began receiving targeted email communications from Predator over a period of several years and ultimately sought a consultation for a H1 Duramax Conversion. (*Id.* at 16.) Casiano and Predator engaged in a series of phone call and email exchanges in furtherance of this transaction, including exchanges related to the transport of Casiano's Hummer to and from California. (*Id.*) Predator was aware that Casiano resided in Arizona based on these interactions. (*Id.*)

Predator submitted a declaration of its own by Ryan Wilson, Predator's CEO. (Doc. 14-1.) Wilson stated that Predator has no employees in Arizona, does not market its business in Arizona, and does not solicit business from Arizona residents. (*Id.* at 1-2.) Further, Predator outsources its email distribution to Epik Productions. (*Id.* at 2.) Epik Productions is solely responsible for the creation and content of its email distributions, maintains no location, physical address, or other geographical information about the email recipients, and only sends email solicitations to individuals who have opted in to receive the emails. (*Id.*)

Casiano's argument in support of specific jurisdiction is flawed for at least three reasons. First, Casiano does not allege any actions by Predator that initiated contacts with Arizona. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 ("[T]he relationship between the nonresident defendant, the forum, and the litigation must arise out of contacts that the defendant *himself* creates with the forum State.") (internal quotation and citation omitted). Predator's use of a generally accessible website does not constitute

---

[1] Casiano argues that Predator availed itself of Arizona by shipping products into the forum state in 2015/2016. (Doc. 13 at 7.) The Court disagrees. Though shipping a single, physical product into the forum state via an interactive website *could* satisfy the first prong of the "minimum contacts" test, s*ee Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1094 (9th Cir. 2023), the 2015/2016 purchase here is too attenuated from the Agreement at issue to satisfy the second prong of the "minimum contacts" analysis.

purposeful availment of Arizona and Casiano points to no specific website features seeking a commercial presence in the state. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997). Predator's website, "while interactive, [is] informational in nature and function[s] more like broad national advertising campaigns," which is insufficient to find personal jurisdiction in Arizona. *Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC*, Nos. CV-11-2304-PHX-NVW, 2013 WL 442296, at *2 (D. Ariz. Feb. 5, 2013). Additionally, the consummation of a contract stemming from phone calls and email communications with a forum resident is insufficient to create personal jurisdiction. *Gray & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 761 (9th Cir. 1990). This principle remains valid even if it was foreseeable that injury may occur in the forum. *Id.*

Second, Casiano's argument that Predator's targeted email campaign demonstrates purposeful availment falls short. Casiano alleged only that he began receiving targeted email communications after his late 2015/early 2016 parts purchase; he offered no controverting evidence that he did not request these emails by opting in. *See Axiom Foods*, 874 F.3d at 1068 ("[T]he minimum contacts analysis examines the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.") (internal quotation and citation omitted). The burden is Casiano's to overcome on this point, but Casiano's own exhibits reveal that he received the emails because he signed up for an account and opted in via Predator's website. (Doc. 13 at 23-47.) Even if Predator initiated the email campaign, it still would fall short under a theory of individualized targeting because individualized targeting "will not, on its own, support the exercise of specific jurisdiction." *Axiom Foods*, 874 F.3d at 1071. In alleging a targeted email campaign, Casiano did not identify the "something more" that is required to transform a passive internet presence into contacts with a forum state sufficient to confer personal jurisdiction. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020-21 (9th Cir. 2002).

Moreover, as it relates to the email campaign, Epik Productions' actions cannot be imputed to Predator under an agency theory. In the Wilson declaration, Predator disclaimed all control over the creation of the emails, the content of the emails, and the distribution of

the emails. (Doc. 14-1 ¶¶ 7-14.) Where, as here, the contracted publisher controls all fundamental decision-making over the emails, the actions of the third-party publisher cannot be imputed to the defendant. *See Durward v. One Techs. LLC*, No. CV 19-6371-GW-AGRx, 2019 WL 4930229, at *5 (C.D. Cal. Oct. 3, 2019).

Third, the Agreement does not create any ongoing obligations for Predator in Arizona. *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). The Agreement contemplated services for a H1 Duramax Conversion. (Doc. 13 at 16.) The Agreement additionally included, at Casiano's request, transportation to and from California. (Doc. 4-1.) However, once Predator shipped the Hummer back to Arizona, its contractual obligations ended. Because the Agreement did not "create[] or contemplate[] continuing relationships and obligations between the defendant and the forum," the Agreement itself does not constitute purposeful availment. *Henrietta Mine LLC v. A.M. King Indus. Inc.*, No. CV-20-01106-PHX-SMB, 2021 WL 1561505, at *3 (D. Ariz. Apr. 21, 2021).

Although the inquiry could end here, Predator's alleged contacts with Arizona also fail the second prong. The second prong asks if each claim "arises out of or relates to [Predator's] forum-related activities." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). Both parties contend that the Court should utilize a "but for" test to analyze this prong.[2] (Doc. 13 at 9-10; Doc. 14 at 9-10.) In other words, the Court asks whether the claims at issue in the case would not have arisen "but for" the defendant's forum-related activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, that cannot be the case. Casiano was a return customer, having ostensibly been aware of Predator's business

---

[2] In 2021, the Supreme Court emphasized the disjunctive nature of the "arises out of or relates to" language, noting that the second half of the standard "contemplates that some relationships will support jurisdiction without a causal showing." *Ford Motor Co. v. Montana Eighth Judicial District Court,* 141 S. Ct. 1017, 1026 (2021). The Ninth Circuit likewise has observed that a causal relationship between the contacts and the claims is not always required. *See Impossible Foods, Inc. v. Impossible X LLC*, No. 21-16977, 2023 WL 5921361, at *10 (9th Cir. Sept. 12, 2023) ("But the nature of [the contacts] need not be causal. . . .") (internal quotation omitted); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 n.5 (9th Cir. 2021) ("[O]ur precedents permit but do not require a showing of but-for causation to satisfy the nexus requirement."). Here, however, both parties ask the Court to apply a "but for" causation standard, and Casiano avers only that his "claim *arises out of* [Predator's] Arizona-related activity" (Doc. 13 at 9 (emphasis added)), thus limiting his argument to the first half of the disjunctive test, which is causal. The Court accordingly limits its analysis to the arguments made by the parties.

for upwards of five years before the events leading to his contract claims. (Doc. 13 at 15.) Too, over one year had elapsed between Predator's last email solicitation and Casiano's completion of the "Contact Us" form. (Doc. 13 at 42; Doc. 4-1.) Casiano has not met his burden of demonstrating that he would not have inquired into a H1 Duramax Conversion "but for" these activities.

Casiano further points to Predator's limited troubleshooting after completion of the engine conversion as a "but for" cause of his claims in this case. (Doc. 13 at 10.) More specifically, Casiano identifies Predator's refusal to engage in prolonged troubleshooting efforts, asserting that "had [Predator] not . . . fail[ed] to ship the [Hummer] back to California to fix its subpar work, [his] claims would not have arisen." (Doc. 13 at 9-10.) The Court disagrees. Predator's resistance to continue assisting in troubleshooting efforts *after* completion of the engine conversion, like Predator's other forum-based activities, is not a "but for" cause of the defective engine conversion at the heart of this dispute. Further, when assessing specific personal jurisdiction, the Court examines a defendant's forum-related activities, not its inactivity. Predator's inaction is not a contact with Arizona.

Finally, Casiano's request for jurisdictional discovery is denied. Casiano seeks to uncover whether Predator "actively solicits other Hummer owners in Arizona or frequently conducts [sic] business in the State . . . ." The Court grants leave for discovery only "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto*, 539 F.3d at 1020 (internal quotation and citation omitted). Here, no additional factfinding is necessary. Casiano seeks additional information relating to Predator's sales in Arizona, but "neither [Casiano's] complaint nor his affidavit allege that [Predator is] engaged in such sales." *Id.* Predator's other activities, as they relate to this case, do not amount to "more than a mere hunch" that they will yield anything jurisdictionally relevant. *Smith v. Progressive Produce LLC*, No. CV-21-01597-PHX-SMM, 2022 WL 1210647, at *4 (D. Ariz. Mar. 1, 2022).

**IV. Conclusion**

In granting Predator's motion to dismiss, the Court passes no judgment on the merits

of the underlying claims. However, fundamental due process principles require a different court, one with personal jurisdiction over Predator, to reach those merits.

**IT IS ORDERED** that Casiano's request to engage in jurisdictional discovery (Doc. 13.) is **DENIED** and Predator's motion to dismiss (Doc. 4.) is **GRANTED**. This action is dismissed without prejudice for lack of personal jurisdiction. The Clerk is directed to terminate this case.

Dated this 19th day of September, 2023.

Douglas L. Rayes
United States District Judge